POLLIHAM, Respondent, v. REVELEY, Defendant; BOBB, Interpleader, Appellant.

St. Louis Court of Appeals, February 27, 1906.

1. MORTGAGES AND DEEDS OF TRUST: Purchaser of Note Secured by Mortgage: Transfer of Security. The rule that a transferee of a note secured by a mortgage takes the mortgage also, does not apply where the intention of the parties is otherwise.

2. ———: ———: ———. After a sale of real estate by a trustee under a deed of trust at which the mortgagee was purchaser, a stranger to the deed of trust purchased the note secured thereby for a nominal consideration and for the alleged purpose of holding it only against the maker. Afterwards the trustee's

sale was set aside by a decree of court and a foreclosure sale ordered and the property sold under it. The holder of the note who was not a party to the proceeding, then interpleaded for the proceeds. *Held*, the mortgagee was entitled to the proceeds sufficient to satisfy his note.

3. ——: ——: ——: Party Not Interested. And where the purchaser of the note secured by the first mortgage purchased also a note secured by a second mortgage in the same manner and under the same circumstances, the purchaser could not complain of a ruling by the trial court, though it was erroneous, disposing of the proceeds between the first mortgagee and the second mortgagee.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*T. J. Rowe* and *R. H. Stevens* for appellant.

On June 19, 1901, plaintiff Polliham appealed from the decree of the circuit court of March 25, 1901, and gave a supersedeas bond and thereby prevented the enforcement of said decree from that date until June 4, 1904, when the mandate of the Supreme Court was filed in the circuit court, and by reason of his improper conduct caused the notes to remain unpaid, and, therefore, is not entitled to any interest from the date of the decree of March 25, 1901, of the Circuit Court to the date of sale. The effect of the decree was to place all parties in the same position they were in before the trustee's sale was made by G. Wm. Senn, attorney in fact for Joseph Franklin, on June 2, 1900. Polliham v. Reveley, 181 Mo. 622, 81 S. W. 182.

*Rassieur, Schnurmacher & Rassieur* and *G. Wm. Senn* for respondent.

(1) Following the sale of June 2, 1900, and controlled by the decree of March 25, 1901, the beneficial and legal interest under the first deed of trust and debt

secured, were merged in and changed to the form of the trustee's deed to Polliham; the cancelled notes and executed deed of trust carried no title by the delivery of September 3, 1900; the evidence shows no act of transfer of the dead obligation by such delivery. Schanewerk v. Hoberecht, 117 Mo. 29-30, 22 S. W. 949. (2) The debt, heretofore represented by the first deed of trust, being preserved in equity as an obligation against the Reveleys, bears interest until a due and proper foreclosure according to the decree of court; the appeal did not hinder the obligees (in equity) from paying the debt or the interest as accruing on the debt; they retained the possession, receiving the income and benefits from the land; the distribution is determined by the decree, rendered and affirmed, and is to be carried out, as a matter of rights finally adjudicated. (3). Appellant's point 5 of his brief was not before the trial court, upon the motion for a new trial, and should not be considered upon appeal. Hulett v. Nugent, 71 Mo. 134; Atkinson v. Dixon, 96 Mo. 587, 10 S. W. 162; St. Louis v. Brooks, 107 Mo. 380, 18 S. W. 22.

GOODE, J.—This action is ejectment for twelve and one-half acres of land in St. Louis county; but the proceeding involved in the appeal arose after final judgment in the main action and related to the distribution of the money accruing from a sale under a decree foreclosing a deed of trust on the land. The defendants in the ejectment suit were Nannie, Sallie and Albert Reveley and the plaintiff was George B. Polliham, on the appeal the respondent. John H. Bobb, the appellant, came into the proceedings by a motion filed after judgment, in which he asked to participate in the distribution of the proceeds of the sale of the land. Nannie and Sallie Reveley are the sisters of Albert L. Reveley, who, in 1897, held the title to the land under a conveyance from Martha E. Bobb. Though the title was in him, it seems that he acquired it for his two sisters, whom he

put into possession as early as October, 1898. While the land stood in his name, he incumbered it by three deeds of trust to secure notes given by himself. The senior of those incumbrances was dated February 27, 1897, and conveyed the premises to Joseph Franklin as trustee to secure the payment to Susan Franklin, of a principal note for the sum of $2,000, payable three years after date, and six semiannual interest notes for sixty dollars each; all the notes bearing eight per cent interest from maturity. The second deed of trust was dated March 1, 1897, made to Wilbur F. Parker as trustee and secured the payment of a principal note of $2,600, due three years after date to Martha E. Bobb, and six semiannual interest notes, each for the sum of seventy-eight dollars. On this indebtedness, $125 was paid October 4, 1900. The third incumbrance was dated March 16, 1897, made to Thomas J. Rowe as trustee to secure the payment to John H. Bobb of a principal note for $1,250 due two years after date, and four interest notes for thirty-seven dollars and fifty cents each. The senior incumbrance contained a clause authorizing the trustee, Joseph Franklin, in case of default by the grantor, to sell the property at public vendue in the usual method. Said clause reads, that in case of default, "said party of the second part (whether acting in person or by attorney in fact, thereunto authorized by law) or in case of his death, his successor in this trust, may proceed to sell the property hereinbefore conveyed," etc. Default having been made in the payment of the notes secured by the first deed, the land, of course, became subject to foreclosure sale. William C. Waldeck, a real estate agent, in the city of St. Louis, knew of the default and took certain steps, which will be related, to acquire the land under a deed of trust sale. In doing so, he appears to have acted as the agent of Martha E. Bobb, the holder of the notes secured by the second deed of trust. The evidence tends to show that at the time of the default, in the Sum-

mer of 1900, the land was worth about $7,000, whereas the first incumbrance and the accumulated interest, amounted to between $2,000 and $2,500. G. Wm. Senn, who is an attorney at law in the city of St. Louis, was the attorney for Waldeck and also for Martha E. Bobb. Waldeck purchased from Susan Franklin, the beneficiary in the first deed of trust, the notes thereby secured and at the same time procured from Joseph Franklin, the trustee in that instrument, a power of attorney authorizing Senn to advertise and sell the property under the deed of trust in place of said Franklin. Pursuant to this power of attorney, Senn advertised the property for sale and sold it on June 2, 1900, at public outcry at the place designated in the deed. The purchaser was the respondent, George B. Polliham, who bid the property in for $2,500, or less than one-half its actual value. Polliham was not acting for himself in the transaction but for Waldeck, in whose office he was employed as a clerk, and Waldeck, the evidence goes to show, was acting for Martha E. Bobb. Senn executed a trustee's deed conveying the premises to Polliham, cancelled the notes secured by the first deed of trust, paid the expenses of the sale and had left a surplus of $136.81, which ought to have been applied on the debts secured by the second incumbrance. Polliham paid no money on the purchase to Senn, except enough to cover the expense of the sale and the said surplus. The balance of the purchase price of $2,500 was discharged by satisfying and cancelling the notes secured by the incumbrance under which the sale occurred. On December 14, 1900, Polliham instituted this action of ejectment to recover from the three Reveleys the possession of the premises. His demand was resisted by the defendants, who set up in their answer the facts we have stated and alleged that the sale by Senn was illegal and contrary to the true intention of the deed of trust, which empowered no one but Joseph Franklin to act as trustee in selling the premises. Wherefore, they prayed that the conveyance from Senn to

Polliham be set aside and for naught held.   At the trial of the ejectment action the circuit court found the facts in accordance with the foregoing narrative, set aside the sale Senn had made and the trustee's deed he had executed to Polliham as attorney in fact for Franklin, and ordered a resale of the premises by the sheriff of St. Louis county for the purpose of enforcing the deed of trust; ordered further that the sheriff report the sale to the court for approval and distribution of the proceeds. This decree was entered March 25, 1901.   Polliham appealed to the Supreme Court, where the decree was in all things affirmed on May 25, 1904.   [Polliham v. Reveley et al., 181 Mo. 622, 81 S. W. 182.]   The appeal was accompanied by a supersedeas bond which prevented a sale by the sheriff until the case was disposed of by the Supreme Court; hence, no sale occurred until October 14, 1904.   The property brought the sum of $4,000 in cash.   A report of the sale was filed by the sheriff and duly approved by the court.   The appellant, Bobb, filed his motion to participate in the distribution of the proceeds on October 14th.   To make the grounds of this motion clear, it is necessary to narrate what occurred between Waldeck and Bobb after the sale of the premises by Senn, as attorney in fact, for Joseph Franklin. Bobb conceived the notion that said sale was illegal and would be set aside by the court.   With this opinion in mind he contrived a scheme to become the owner of the notes secured by the first two deeds of trust, being already the owner of the notes secured by the third one.   The theory on which he acted was that if he acquired all the notes secured by the two senior liens and the sale of the premises by Senn was annulled, he would be entitled, as the owner of the notes secured by the first deed of trust, to the proceeds of any subsequent sale under it.   Senn had sold the premises on June 2, 1900, to Polliham, but the latter did nothing towards asserting title until the following December.   During the interval, to-wit, on or about August 2, 1900, John H. Bobb sent William Reve-

ley, brother of Albert Reveley, to Waldeck to buy the notes secured by the second deed of trust. These notes were held by Martha E. Bobb, but Waldeck controlled them as her agent. The principal one was for $2,600 on which, as already stated, there should have been credited $136.81, the surplus remaining of the proceeds of the land after paying the notes secured by the first lien. At the time of this transaction the notes appeared to be unsecured by any lien on the land and good only as the obligations of Albert L. Reveley. When William Reveley approached Waldeck about the purchase of the Martha E. Bobb notes, he represented that he owed his brother Albert some money, and said that if he could buy the notes cheap he would do so in order to offset them against his debt. Waldeck asked $100 for the notes but William Reveley demurred, saying the price was more than he would pay, because he only owed his brother $125. After a consultation with his client, Waldeck sold William Reveley the notes for thirty-five dollars. About a month later, that is to say, on September 2, 1900, William Reveley entered Waldeck's office and proposed to buy the notes on Albert Reveley which were secured by the first deed of trust. He stated as his reason, that Albert had refused to accept the Martha E. Bobb notes secured by the second deed of trust as an offset for William Reveley's debt, because he (Albert) was not certain that the notes secured by the first deed of trust had been cancelled. Waldeck told William Reveley the notes were worthless; but the latter called several times and pressed his demand for the purchase, and Waldeck finally sold them to him for seven dollars and fifty cents. The deeds of trust were never transferred to William Reveley, who represented that he simply wanted to buy the notes. John H. Bobb testified himself that he was not known to Waldeck in these transactions. The arrangement between Bobb and William Reveley was that the latter should be allowed a credit of $125 on the Martha E. Bobb note of $2,600 and this should cancel the

liability owed by William to Albert Reveley. The notes
were indorsed without recourse by the original payees,
Susan Franklin and Martha E. Bobb, and with that in-
dorsement, were turned over by William Reveley to
John H. Bobb. The result of the foregoing transac-
tions was that Bobb acquired the notes secured by the
first deed of trust for seven dollars and fifty cents and
those secured by the second deed of trust for thirty-five
dollars; forty-two dollars and one-half in all.
The amount of the two sets of notes is more
than $4,600 and hence, more than the price for
which the land was sold by the sheriff, to-wit,
$4,000. In his motion for a share of the proceeds of the
sale, Bobb set up his ownership of the notes and asked
that the proceeds be first applied to paying the court
costs and the expenses of the sale, and next to paying
him, (Bobb) the notes secured by the three deeds of
trust according to their sequence. Polliham filed a mo-
tion that after paying the court costs and the expenses of
the sheriff's sale, the proceeds be paid to him to cover the
expenses of the original trustee's sale by Senn and inci-
dental outlays in connection therewith, insurance pre-
miums advanced under a clause in the first deed of trust,
general taxes on the premises for the years 1897-8-9,
which he had paid, together with interest thereon, and
next in satisfaction of the principal and interest notes
secured by the first deed of trust, together with interest
on each of said notes at the rate of eight per cent per an-
num from their respective maturities until payment was
made, and for the repayment to him of $136.81, which he
had paid to Martha E. Bobb on the principal note se-
cured by the second deed of trust. The decree of the
court in effect overruled Bobb's motion and ordered the
proceeds to be paid in accordance with Polliham's mo-
tion except as to said sum of $136.81. As we understand,
the court found that this money had never been paid by
Senn or Polliham to Martha E. Bobb; therefore, should
go to Garrard Strode as administrator of her estate, she

having died since the original decree. Bobb appealed from the order of distribution. This contest is exclusively between him as the owner of the notes secured on the land by the three incumbrances, and Polliham. The latter represents Waldeck and the testimony goes to show that Waldeck represents Martha E. Bobb; but Polliham is the only party to the record who is contending with Bobb. The theory on which the latter proceeds is that he is entitled to the proceeds of the sheriff's sale after satisfying the costs of this action, because he is the holder of the notes secured by all the incumbrances. The argument is that Polliham paid the price he bid the land off for at the Senn sale, not in cash, but by the cancellation of the notes secured by the first deed of trust and really advanced but little money to Senn; barely enough to pay the costs of the sale and leave a small surplus to be applied towards discharging the second lien. That, hence, Polliham is out nothing which he should be repaid, and if he is paid the amount of the debts secured by the first incumbrance, he will get that much money for nothing and Bobb the present holder of the notes, nothing on them. The uncontradicted testimony in the case proves that Bobb never acquired the first or second deed of trust as security for the notes he bought. It is true that a mortgage securing a promissory note ordinarily accompanies the note into the hands of a transferee, but this is not so when the intention of the parties is otherwise. [Lee v. Turner, 15 Mo. App. 205, 89 Mo. 289.] The notes Reveley bought were not only past due and dishonored, but had been marked "paid" out of the proceeds of the sale and cancelled. Now the positive testimony of Waldeck proves that William Reveley, in negotiating for the notes, stated that he was acquiring them simply as the obligations of Albert Reveley, wholly unsecured on the land, and the facts demonstrate that there was a distinct understanding that he was not getting the benefit of the deeds of trust. The prices given for the two sets of notes refute the contention that they

were looked on as valuable.    This transaction was a ruse, the real object of which was not to enable William Reveley to discharge a debt he owed his brother, but to further a scheme of John H. Bobb which looked to absorbing untimately the proceeds of the land.    The case of Lee v. Turner, supra, is decisive of this one, and is stronger in support of the principles we have stated because the conduct of all the parties was devoid of artifice.    Turner bought a deed of trust which was voidable because advertised only twenty days, instead of thirty as the deed of trust required.    Shortly after the sale, Turner assigned the notes secured by the incumbrance to B. M. Million in order that the latter, if possible, might collect from the estate of the maker, the balance on them which the proceeds of the sale did not pay.    Turner was to have one-half of the sum thus recovered and Million the other half.    Sometime afterward, the invalidity of the sale was discovered and the property again advertised and sold.    Meanwhile Million had borrowed three 'thousand dollars from William Roemheld on the notes, Roemheld's attorney advising him that the first sale was invalid and that the notes were still secured on the land. The contest was over the proceeds of the second sale, which Turner claimed as the original beneficiary in the deed of trust, Million as assignee of the notes and Roemheld as pledgee holding them as collateral to Million's debt.    This court held that Turner's claim was good against both Million and Roemheld; against Million because he took an assignment of the notes knowing all the facts and on the understanding that the deed of trust did not go with them, but had been exhausted; against Roemheld because he accepted the notes from Million as collateral, after their maturity and with knowledge of facts to put him on inquiry.    The Supreme Court reversed the court's ruling regarding Roemheld's right and held he acted in good faith, relying on the security of the deed of trust.    As between Turner and Million, the Supreme Court said there could be no difficulty, for Million

took no interest in the deed of trust, but bought the notes to proceed against the maker's estate. In this case, there was a distinct understanding between Waldeck and William Reveley that the latter bought only the notes to hold as an offset against Albert Reveley and that the land was no longer security for them.

Another answer to the contention of the appellants is that the interest and rights of Polliham were settled by the decree in the ejectment case which was affirmed by the Supreme Court. Bobb was not a party to that action and as he has intervened in it after judgment, whatever interest he has in the fund, must be enforced in accordance with the judgment. If he has rights superior to those decreed in the judgment, he will have to seek them in a separate suit instituted in his own behalf. Now in the decree rendered on June 2, 1900, the circuit court adjudged that Polliham was in equity the holder and owner of the first deed of trust as an unsatisfied incumbrance on the real estate, and that the amount he was entitled to collect was the amount of the notes secured by the deed of trust and remaining unpaid at the time of the decree, with accrued interest thereon, the costs of the sale and any surplus proceeds which might have been paid out of the purchase money received from Polliham, to the holders of the notes secured by subsequent deeds of trust. It further appears that the court adjudged that the proceeds of the sheriff's sale, after satisfying the costs of the suit and of the sale, should be distributed first to Polliham, next to the holders of the subsequent deeds of trust, and lastly, to Nannie Reveley, the owner of the equity of redemption. Those matters have been adjudicated. Now Bobb's motion is nothing less than an effort to have the circuit court disregard its decree rendered in a suit to which he was not a party, after it has been affirmed by the Supreme Court, and instead of distributing the fund in accordance with the decree, pay practically all of it to him, who was not found to be entitled to any of it except as the owner of notes se-

116 App—46

cured by the last incumbrance.   In other words, the
court adjudged Polliham was entitled to a lien on the
land or its proceeds, equal to the debt secured by the
first incumbrance, and Bobb asked that the amount of
that debt be paid to him, leaving Polliham and those
whom he represents empty handed.    Certainly such an
order would be erroneous in the present proceeding.  Nor
do we think Bobb, in view of the terms on which he
bought the notes, would occupy any better position in an
independent proceeding.   What he acquired was a claim
against Albert Reveley if the notes secured by the first
and second deeds in trust were not satisfied in full by
the proceeds of the land.

A more difficult problem is the right of Polliham to
be paid interest on the amount for which he was decreed
a lien, from the time of the decree.   The court ordered
the land resold by the sheriff for the benefit of all parties
and if this sale had been made forthwith, interest would
have been stopped on the amount of Polliham's incum-
brance, to the advantage of the subsequent incumbran-
cers and of Albert Reveley, the debtor.   Polliham pre-
vented the sale by giving a supersedeas bond and thereby
delayed the matter through several years.   This question
has not been treated thoroughly in the briefs of coun-
sel.   It is urged in favor of the respondent that the point
was not raised in the motion for rehearing; but it was
raised in the fifth paragraph of that motion.   It is fur-
ther said that Bobb had no right to raise the question
by his motion in the court below.   We would consider
this position well taken if Polliham had been adjudged
in the decree for the resale, to be entitled to interest
pending the appeal; but he was not.   He was adjudged to
be entitled to the amount of the first notes remaining un-
paid at the time and interest thereon.   That meant the
interest to the date of the distribution, which was ex-
pected to follow shortly.   Of course, there was no decis-
ion that he would be entitled to interest for the years
which might elapse while an appeal was pending, for it

was not known that there would be an appeal; and much might be said in support of the proposition that he is not entitled to such interest. But we think there is an obstacle in the way of a decision of this point. The parties who are interested in it are Albert Reveley and Martha E. Bobb's estate. Albert Reveley is interested because, if Polliham ought not to recover interest pending the appeal to the Supreme Court, the portion of the proceeds of the land which otherwise would have to be applied to discharge that item, can be applied on the debt secured by the second, or Martha E. Bobb, deed of trust and thereby reduce the amount for which Reveley remains liable. Martha E. Bobb's estate is interested because, under the original decree, whatever surplus remained after discharging the first lien, was to be applied on the second one and this surplus will be increased if Polliham is denied his full demand for interest. John H. Bobb was the third incumbrancer but is not interested as such, because in any contingency the amount to be applied on the second lien will fall short of satisfying it. If Bobb has any right to be heard in the matter, it is as the present holder of the Martha E. Bobb notes; and whether he has the right depends on the position taken in the lower court by Strode as administrator of her estate towards Bobb's acquisition of the lien of the second deed of trust, and the court's decision of the issue if it was raised. The testimony goes to show that Bobb no more acquired that lien than he did the first one for which Polliham is contending with him. Did Martha E. Bobb's administrator contest his claim to the second lien and was that matter adjudicated? The administrator intervened for a participation in the proceeds of sale, but his motion has not been preserved in the record before us. Yet in the order of distribution, we find the circuit judge so far sustained the administrator's intervention as to order the surplus remaining after satisfying the first lien to be paid to him. Now if the court had ruled that the second lien was held by Bobb, the surplus would

have been ordered paid to him.  It follows that the point was determined in favor of Martha  E.  Bobb's  estate. Hence, John H. Bobb has no right, either as second or third incumbrancer, which was impaired by allowing interest to Polliham for the time the case rested in the Supreme Court.  As Albert Reveley and the administrator submitted to the order of distribution, instead of appealing, the question of interest has not been presented to the court by the only parties aggrieved if there was an erroneous ruling on it below.  The judgment must be affirmed.  [Othenin v. Brown, 66 Mo. App. 318.]  *Bland, P. J.,* and *Nortoni, J.,* concur.